IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ELIZABETH V., | * | |
| Plaintiff, | * | |
| vs. | * | Civil Action No. ADC-19-2992 |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,[1] | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

On October 14, 2019, Elizabeth V. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny her claims for Disability Insurance Benefits ("DIB"). ECF No. 1 ("the Complaint"). After consideration of the Complaint and the parties' cross-motions for summary judgment (ECF Nos. 12, 18), the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md. 2018). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 12) is DENIED, and Defendant's Motion for Summary Judgment (ECF No. 18) is GRANTED.

### PROCEDURAL HISTORY

On September 19, 2015, Plaintiff filed a Title II application for DIB, alleging disability beginning on September 16, 2015. She later amended her alleged onset date to May 1, 2016. ECF No. 9-3 at 78, ECF No. 12-1 at 1. Her claims were denied initially and upon reconsideration on December 29, 2015 and April 13, 2016, respectively. Subsequently, on May 2, 2016, Plaintiff filed a written request for a hearing and, on May 2, 2018, an Administrative Law Judge ("ALJ")

---

[1] Currently, Andrew Saul serves as the Commissioner of the Social Security Administration.

1

presided over a video hearing. On August 6, 2018, the ALJ rendered a decision ruling that Plaintiff "ha[d] not been under a disability within the meaning of the Social Security Act [(the "Act")] from May 1, 2016, through the date of this decision." ECF No. 9-3 at 92.

On October 14, 2019, Plaintiff filed the Complaint in this Court seeking judicial review of the SSA's denial of her disability application. On June 24, 2020, Plaintiff filed a Motion for Summary Judgment, and Defendant filed a Motion for Summary Judgment on September 21, 2020. This matter is now fully briefed, and the Court has reviewed both parties' motions.

## STANDARD OF REVIEW

"This Court is authorized to review the [SSA]'s denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive . . ." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a *de novo* review of the evidence, and the [SSA]'s finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the issue before the reviewing court is not whether the plaintiff is disabled, but whether the ALJ's finding that the plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) ("[A] reviewing court must uphold the [disability] determination when an ALJ has applied correct

legal standards and the ALJ's factual findings are supported by substantial evidence." (citation and internal quotation marks omitted)).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal citations and quotation marks omitted). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal citations and quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### DISABILITY DETERMINATIONS AND BURDEN OF PROOF

To be eligible for DIB, a claimant must establish that she is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant shall be determined to be under disability where "h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age,

3

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§

404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 16-3p, 2017 WL 5180304, at *2–13 (Oct. 25, 2017). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *6–8.

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

### **ALJ DETERMINATION**

In the instant matter, the ALJ preliminarily found that Plaintiff met the insured status requirements of Title II of the Act through December 31, 2020. ECF No. 9-3 at 80. The ALJ then performed the sequential evaluation and found at step one that Plaintiff "ha[d] not engaged in substantial gainful activity since May 1, 2016, the alleged onset date." *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: "mild degenerative changes in the cervical and lumbar spine, obesity, bipolar disorder, anxiety disorder, and borderline

personality disorder." *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 82. At step four, the ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) with the following nonexertional limitations: frequently handling and fingering; occasionally climbing ramps or stairs, balancing, stooping, kneeling, crouching, and crawling; never climbing ladders, ropes or scaffolds; avoiding concentrated exposure to vibrations; avoiding concentrated exposure to workplace hazards; and carrying out simple to moderately complex tasks (up to SVP 4) in 2-hour increments with 10- or 15-minute breaks in-between.

*Id.* at 83. The ALJ then determined that pursuant to the "expedited process" set forth in sections 404.1520(h) and 416.920(h) 20 C.F.R., she need not decide whether the Plaintiff can do her past relevant work. *Id.* at 90. Finally, at step five, the ALJ found, "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* at 91. Thus, the ALJ concluded that Plaintiff "ha[d] not been under a disability, as defined in the [Act], from May 1, 2016, through the date of this decision." *Id.* at 92.

## DISCUSSION

Plaintiff raises three allegations of error on appeal: (1) that the ALJ failed to inquire on the record about potential conflicts in the vocational expert's testimony; (2) that the ALJ improperly discounted Plaintiff's subjective complaints of pain; and (3) that the ALJ failed to give adequate weight to the opinion of Plaintiff's treating psychiatrist. ECF No. 12-1 at 5. The Court is unpersuaded by these arguments. Each alleged error is addressed below.

### A. The ALJ committed harmless error by failing to question the VE on the record about potential conflicts with her testimony and the DOT.

Plaintiff first argues that the ALJ erred in failing to inquire on the record as to whether there were any conflicts between the testimony of the vocational expert ("VE") and the information in the Dictionary of Occupational Titles ("DOT") as required by SSR 00-4p. ECF No. 12-1 at 7. Plaintiff asserts that this is a basis for remand in order to determine whether a conflict exists between the VE's testimony and the DOT. *Id.* at 8. Defendant contends that any error by the ALJ is harmless because no conflict exists between the testimony or the DOT. ECF No. 18-1 at 6. The Court agrees with Defendant.

Social Security Ruling 00-4p clarifies 20 C.F.R. § 404.1566, which states, without more, that ALJs will consider both the DOT and VE testimony to determine whether a Social Security claimant can find work suited to her RFC. SSR 00-4p explains that its purpose is to require the ALJ (not the VE) to "[i]dentify and obtain a reasonable explanation" for conflicts between the VE's testimony and the DOT, and to "[e]xplain in the determination or decision how any conflict that has been identified was resolved." SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000). The Ruling then proceeds to require that the ALJ undertake exactly these responsibilities. First, the ALJ must "[a]sk the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT;" and second, "[i]f the VE's . . . evidence appears to conflict with the DOT," the ALJ must "obtain a reasonable explanation for the apparent conflict." *Id.* at *4. Notably, this second requirement is so independent of the first that it does not rest on the VE's identification of a conflict. Rather, SSR 00-4p directs the ALJ to "resolve the conflict by determining if the explanation given by the VE . . . is reasonable," *id.* at *2, and to "explain the resolution of the conflict irrespective of how the conflict was identified," *id.* at *4. Even if the VE states there is no conflict between the evidence and the DOT, the ALJ must still recognize

8

and resolve conflicts that are not immediately obvious. *Pearson v. Colvin*, 810 F.3d 204, 209–10 (4th Cir. 2015).

Plaintiff is correct that the ALJ failed to question the VE about whether there were any conflicts between her testimony and the information in the DOT. *See generally* ECF No. 9-3 at 160-163 (testimony of VE at hearing). At the hearing however, Plaintiff raised no objection to this admission. *Id.* Further, Plaintiff has not specifically identified any purported conflict. The VE identified three jobs that Plaintiff could perform given her RFC: router (DOT 222.587-038), machine operator (DOT 569.686-046), and non-postal mail clerk (209.687-026). *Id.* at 160-1. Based on the information in the DOT, all three jobs are consistent with the limitations set forth in Plaintiff's RFC. *See supra* at 7. Accordingly, because no actual conflict exists between the VE's testimony and the DOT, the ALJ's failure to question the VE in accordance with SSR 004-p is harmless error and is not a basis for remand.

### B. The ALJ properly assessed Plaintiff's credibility and subjective complaints.

Next, Plaintiff asserts that the ALJ discounted her subjective evidence of pain solely based on objective evidence. ECF No. 12-1 at 8. Defendant contends that the ALJ identified proper rationale in support of the credibility finding by noting evidence that contradicted Plaintiff's allegations of disabling symptoms. ECF No. 18-1 at 10. The Court agrees with Defendant.

The United States Court of Appeals for the Fourth Circuit laid out the two-step process for evaluating whether a person is disabled by pain and other symptoms under 20 C.F.R. §§ 404.1529 and 416.929:

> Under the regulations implementing the [Act], an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms. Second, the ALJ

9

> must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects.

*Lewis*, 858 F.3d at 865–66 (internal citations omitted); *see also Craig*, 76 F.3d at 594 (describing the two-step process). At the second stage, the ALJ must consider all the available evidence, including the claimant's medical history, medical signs, statements by the claimant and her treating or examining physicians, objective medical evidence of pain, and any other information proffered by the claimant. 20 C.F.R. §§ 404.1529(c)(1)– (3), 416.929(c)(1)– (3). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 16-3p, 2017 WL 5180304, at *1–12 (Oct. 25, 2017). To assess credibility, the ALJ should consider factors such as the claimant's ability to perform daily activities, activities that precipitate or aggravate the symptoms, medications and treatments used, and other methods used to alleviate the symptoms. *Id.* at *6.

In addition, the ALJ should consider inconsistencies in the evidence to determine whether a claimant's subjective claims regarding her pain symptoms can reasonably be accepted. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Subjective symptoms of pain, standing alone, cannot sustain a finding of disability and a claimant must substantiate her allegations of pain. 20 C.F.R. §§ 404.1529, 416.929; *see also Mickles v. Shalala*, 29 F.3d 918, 923 (4th Cir. 1994) (stating that pain may render claimant incapable of working independent of any physical limitation, but allegations of pain alone are insufficient to find a disability). "According to the regulations, the ALJ 'will not reject [a claimant's] statements about the intensity and persistence of [his] pain or other symptoms or about the effect [the claimant's] symptoms have on [his] ability to work

10

solely because the available objective medical evidence does not substantiate [the claimant's] statements.'" *Lewis*, 858 F.3d at 866 (quoting 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)). The ALJ, therefore, is required to make a finding regarding a claimant's credibility and should specifically refer to the evidence supporting that finding, *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (per curiam), but the ALJ cannot discount Plaintiff's subjective evidence of pain solely based on objective medical findings, *Lewis*, 858 F.3d at 866 (citing 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)).

In the present case, the ALJ appropriately recognized the obligation to properly evaluate the credibility of Plaintiff's testimony regarding her symptoms and the restrictions caused by her impairments, as well as opinion evidence in accordance with 20 C.F.R. §§ 404.1529 and 404.1527. After analyzing the evidence in the record, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, but that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." ECF No. 9-3 at 85.

First, the ALJ summarized Plaintiff's testimony at the hearing, acknowledging Plaintiff's testimony about the symptoms and pain caused by her physical impairments. *Id.* at 82. The ALJ then stated, however, that "the objective medical evidence does not support the degree of pain and functional limitation the [Plaintiff] alleges." *Id.* at 85. The ALJ described Plaintiff's medical history, including her chronic neck, shoulder, back, and left lower extremity pain complaints, which were treated with narcotic medications, injections, and cervical radiofrequency ablation. *Id.* The ALJ observes however, that the treating physician examinations, notes, and MRI findings through 2016, "continued to be unremarkable." *Id.* at 85.

The Court agrees that the ALJ properly relied on both the objective medical evidence and subjective evidence to determine Plaintiff's credibility and that her subjective complaints should be assessed accordingly. As noted, an ALJ should consider inconsistencies in the evidence to determine whether a plaintiff's subjective claims regarding her pain symptoms can reasonably be accepted. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Subjective symptoms of pain, standing alone, cannot sustain a finding of disability and a claimant must substantiate her allegations of pain. 20 C.F.R. §§ 404.1529, 416.929; *see also Mickles v. Shalala*, 29 F.3d 918, 923 (4th Cir. 1994). The ALJ acknowledged that Plaintiff has undergone multiple injections and ablation procedures but points out that "this treatment, alone with narcotic pain medications, has focused on the [Plaintiff's] subjective complaints only." ECF No. 9-3 at 88. The ALJ notes that there is no indication Plaintiff has attempted suggested treatment to address her symptoms. The ALJ writes that:

> there is no indication that [Plaintiff] has had physical therapy, and she stopped seeing her chiropractor in 2016. It appears that she has not had [the] recommended breast reduction surgery, which may have relieved her symptoms and improved function. She also has been advised to exercise to lose weight and reduce her symptoms, she did not testify that she has followed this medical advice. Moreover, the [Plaintiff] has not pursued treatment with an orthopedist or neurologist to determine the cause for her pain, and has not seen a rheumatologist since early 2017, which I find inconsistent with her allegations.

*Id.* Additionally, in accordance with 20 C.F.R. §§ 404.1529 and 416.929, the ALJ considered Plaintiff's history and medication, "[Plaintiff] has continued on with the same pain management practice for several years, although this treatment has reportedly not helped, with no evidence that she has sought a second opinion or referral to a tertiary care center." *Id.* Thus, the ALJ's detailed evaluation of the record evidence against Plaintiff's statements regarding her symptoms amply supports the ALJ's conclusion that Plaintiff's alleged limitations were not entirely

credible. Accordingly, the ALJ properly evaluated Plaintiff's credibility based on findings supported by substantial evidence consistent with 20 C.F.R. §§ 404.1529 and 416.929.

### C. The ALJ properly evaluated the medical opinion evidence.

Finally, Plaintiff argues that the ALJ failed to comply with regulatory factors set forth in 20 C.F.R. §§ 404.1527 and 416.92 by not giving adequate weight to the opinion of her treating psychiatrist, Dr. Gross. ECF No. 12-1 at 10.

Under the treating physician rule, an ALJ must generally give a treating physician's opinion "more weight . . . since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "When the treating source has seen [the patient] a number of times and long enough to have obtained a longitudinal picture of [the patient's] impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). However, where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be afforded significantly less weight. *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017) (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). Moreover, an ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(d)(1). If a treating source's opinion is not given controlling weight, the ALJ must consider the following factors in deciding the appropriate weight to give the treating source's opinion: (1) the length and frequency of the treatment relationship; (2) the nature and extent of the treatment relationship; (3) the amount of evidence supporting the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the physician is a specialist giving an opinion about his

area of specialty; and (6) any other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)–(6). An ALJ need not apply these factors in a mechanical fashion, so long as the ALJ articulates the reasoning behind the weight accorded to the opinion. *Carter v. Astrue*, No. CBD-10-1882, 2011 WL 3273060, at *6 (D.Md. July 27, 2011).

Dr. Gross submitted an opinion and narrative report in April 2018, concluding that Plaintiff has only a fair, or poor to no ability "to perform every specified job task except following work rules." ECF No. 9-3 at 89. After reviewing the medical source statement and narrative report, the ALJ assigned "little weight" to his opinions, articulating her reasoning as follows:

> his contemporaneous treatment notes do not document significant mental status abnormalities or consistent episodes of confusion that would preclude work activity with sufficient breaks. He has attributed the [Plaintiff's] confused behavior at times to medication misuse or sedating medication, not the [Plaintiff's] underlying impairments. He notes that she appears "normal" at most sessions, despite fluctuating physical and mental symptoms.

ECF No. 9-3 at 89. The Court finds that the ALJ properly evaluated and assigned Dr. Gross's opinion little weight because it addresses Plaintiff's behavior in connection with medication use, rather than an underlying abnormality. *Id.* Further, the ALJ finds that Dr. Gross's opinions are inconsistent with the objective medical evidence in the record. *Id.*

Dr. Gross determined that Plaintiff's "mental impairments with episodes of impaired memory and confusion would cause an unacceptable level of absenteeism and interruptions in the workplace." *Id.* The ALJ notes however that the objective evidence demonstrates Plaintiff's memory impairments and confusion stem from medication use or misuse. *Id.* at 86. For example, the ALJ cites Plaintiff's treatment records with Dr. Gross stating, "as of December 2015, her mental status examination findings had been normal except for intermittent episodes of cognitive dysfunction attributed to medication." *Id.* The ALJ also discusses Plaintiff's September 2016

hospitalization for bizarre behavior and subsequent diagnosis of "acute medication-induced delirium." *Id*. at 87. The ALJ also addresses inconsistencies between the objective medical evidence and Dr. Gross's opinion including Plaintiff's December 2016 episode of confusion and memory loss that Dr. Gross determined was likely caused by "sleep deprivation and excessive Xanax," yet noted that her mental status findings "continued to be normal, with good cognitive function, insight, and judgment." *Id*. In addition, according to Plaintiff's medical record, her mental status findings by Dr. Gross through March 2018 "indicate that the [Plaintiff] was alert, had normal psychomotor speed and pace of speech, was not labile, her thinking was rational, realistic, and productive, she had probably mildly impaired cognitive function, and mostly good insight and judgment." *Id*. Such evidence contradicts Dr. Gross's own opinion that Plaintiff's mental impairments would preclude her from working. *See id*. at 89. Consequently, the Court finds the ALJ's reasoning for assigning Dr. Gross's opinion little weight was articulated in the ALJ's written decision and supported by substantial evidence in the record.

## CONCLUSION

In summation, the Court finds that the ALJ properly found that Plaintiff was "not disabled" within the meaning of the Act from May 1, 2016 through the date of the ALJ's decision. Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 12) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 18) is GRANTED, and the decision of the SSA is AFFIRMED. The clerk is directed to CLOSE this case.

Date: 22 December 2020

A. David Copperthite
United States Magistrate Judge

15